## RAY v. UNITED STATES.
### No. 7391.

Circuit Court of Appeals, Seventh Circuit.
June 25, 1941.

B. Howard Caughran, U. S. Dist. Atty., of Indianapolis, Ind., Julius C. Martin, Asst. Atty. Gen., and Fendall Marbury and Wilbur C. Pickett, both of Washington, D. C., for appellant.

Frank C. Wade, of Terre Haute, Ind., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The Government appeals from a judgment for refund of premiums paid by the insured on a war risk insurance policy rescinded by it on the ground of fraud in the application for reinstatement. The suit was brought by the beneficiary of the policy and the administratrix of the estate of the deceased insured. The bill of complaint was in the alternative, to recover the face amount of the policy, or to recover the amount of premiums paid in by the insured after reinstatement of the policy. Both plaintiffs joined in both paragraphs of the complaint. Judgment was rendered January 18, 1941, in favor of the Government on the first paragraph, denying recovery of the face amount of the policy, and in favor of the plaintiffs on the second paragraph, for refund of the premiums paid after reinstatement. On January 25, the judgment was amended, on motion of plaintiffs, to include a provision for payment to their counsel of ten per cent of the amount thereof, for services rendered by him in the litigation. On March 2, the judgment was further amended, apparently on the court's own motion, to provide that the beneficiary of the policy take nothing, and that the administratrix recover the full amount of the premiums involved. From this judgment the Government appealed on June 1, 1941.

We are first confronted by appellee's motion to dismiss the appeal on the ground that it was not timely taken. She contends that the amendment must have been made under either Rule 52(b) or Rule 60(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c,[1] and that unless such amendment fundamentally changes the character of the judgment, it does not extend the time for appeal. Here, she contends, the amendment was merely to correct an error arising from an oversight, and did not fundamentally alter the charac-

---

[1] 52(b). "Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly."

60(a). "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

ter of the judgment which remained the same, so far as appellant was concerned—it did not change the amount found by the court to be due from it, but merely provided that that amount should be paid to one person instead of to two.

We do not agree with appellee that the amendment of March 2, constituted merely the correction of a clerical error. The judgment of January 25 was clearly erroneous in ordering payment of the amount of the premiums to the beneficiary and the administratrix of the insured, since only the latter was entitled to recover the amount due, if any. In view of the ruling in Zimmern v. United States, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118, we think there can be no question of the power of the court to correct the judgment, whether such correction was necessitated by a clerical error or one of law. The amended judgment was not entered nunc pro tunc, nor was there any reason why it should have been. We are convinced that it was a new judgment from which time for appeal is to be computed. Hence, the appeal is properly before us, and the motion to dismiss is overruled.

Appellant contends that the court erred in ordering it to refund premiums paid by the insured after he obtained reinstatement of his policy by fraudulently misrepresenting the then condition of his health, and withholding information as to ailments suffered and physicians consulted by him after lapse of his policy. The facts were stipulated, and the court adopted the stipulation for its special findings of facts. The insured was honorably discharged from service in May, 1919, and a policy theretofore issued to him was lapsed for non-payment of premiums July 1, 1919. In September, 1926, he made written application for reinstatement of $5,000 of the insurance, stating that he was then in as good health as at the due date of the premium in default, and answering "No" to the question, "Have you been ill, or contracted any disease, or suffered any injury, or been prevented by reason of ill health from attending your usual occupation, or consulted a physician in regard to your health, since lapse of this insurance?" He was examined by a medical examiner who recommended him as a first-class risk. In his statement to him he answered the question, "Are you now in good health," "Yes"; and "Have you ever been treated for any disease of the kidney or bladder,"

"No." On the basis of the applications and the medical examiner's report, the policy was reinstated, as of the date of October 1, 1926, without payment of back premiums to the date of lapse, as required in the case of veterans not in good health at the time of reinstatement.

In December, 1926, the insured made application for compensation, claiming a partial eye disability which he said began during service, and for which he received treatment at a hospital in France. In November, 1934, he filed application for total permanent disability, alleged to have begun in August, 1934, and to be caused by "cardiorenal disease." Because of alleged discrepancies discovered while the claim was being investigated, the Veterans' Administration notified the insured in March, 1935, that his reinstated policy was cancelled as of the date of issuance, October 1, 1926, for the reason that he had withheld facts concerning the state of his health during the lapse of the policy. The insured then wrote, on March 26, 1935, "I regret that the condition has happened; as I had no insurance, I feel that I am entitled to the refund of all premiums I have paid." In April, 1935, this claim for refund of premiums was denied.

In August, 1935, the insured made application for total permanent disability benefits under his insurance policy. In connection with this application, he stated that he had never been able to keep steady employment since his discharge, and that he had been totally and permanently disabled from October 15, 1918, due to nephritis, eye trouble, and heart trouble. His application disclosed that, in addition to hospitalization at a number of different hospitals after reinstatement of the policy, he had also been at the Battle Creek Sanatorium in Michigan from January to March, 1924. He also gave the names of two doctors in Terre Haute, one of whom had attended him in 1923 and 1924, and another in 1924 to 1934, and a third, in Battle Creek, who had attended him in 1924. He stated that he had been employed by his father from 1920 to 1924, but was sick more than half the time and forced to give up the work on account of illness; that he was unemployed from 1924 to 1926 due to illness; and that he worked for two months from October, 1926, but was dismissed for losing too much time. The claim for insurance benefits was also denied, on October 24, 1935,

two days after the death of the insured, on October 22, caused by uremia, chronic nephritis and hypertension.

The parties further stipulated that the insured consulted a Terre Haute physician in September, 1923, who diagnosed his trouble as nephritis and treated him for that condition until January, 1924, when the insured on the advice of that same physician went to Battle Creek, Michigan, where he remained under treatment for nine days. His trouble was there diagnosed as "Subacute glomerular nephritis following acute tonsillitis; arteriosclerosis, hypertension." Later during the year 1924, he was attended by another physician who diagnosed his condition as a streptococcic infection which developed into acute nephritis. During the early period of treatment from this physician, in 1924, the insured was near death, and lost his vision for some time. His physician told him he was suffering from kidney trouble, although he did not inform him of the seriousness of it. The insured had complained of his back and kidneys while he was in the military service.

The parties stipulated to the falsity and the materiality of the answers in the application for reinstatement, and that the policy would not have been reinstated had the insured answered the questions truthfully.

We have stated the facts at length in order to show that there can be no question of the extent of the misrepresentation and of the knowledge on the part of the insured of the facts thus misrepresented. It seems clear that a man who suffered so seriously from a kidney condition in 1923 and 1924 that he had to go to a sanatorium for treatment, and thereafter lost his vision and nearly died, could not have innocently forgotten the facts when asked whether he had had any disease of the kidneys or consulted any physician.

■■ Appellee insists that her decedent was entitled to the refund of the premiums, notwithstanding the fraud practiced. She urges that if appellant had brought suit to cancel the insurance because of the fraud, it would have been compelled to tender the premiums paid, and that there is no legal or equitable reason for making a distinction in an action by the insurer to cancel for fraud and a suit by the insured for a refund of the premiums paid after the insurance was cancelled by the insurer. The law, however, seems to have been settled otherwise. The rule is stated in 29 Amer.Jur. on Insurance § 456: "The authorities are unanimous in declaring that where a policy was secured by a fraudulent misrepresentation on the part of the insured, he cannot, after the fraud has been discovered and the policy avoided, maintain an action for the return of the premiums paid by him." See to the same effect, 3 Couch Cyclopedia of Insurance Law § 720, and cases there cited; Annotation 32 L.R.A.,N.S., 298. The cases on the subject were collected and carefully considered by Judge Knight of the Western District of New York in a suit to recover benefits on a war risk policy fraudulently reinstated. See Bavisotto v. United States, D.C., 18 F.Supp. 355. The court concluded that under all the authorities, the Government did not have to tender back premiums paid in on the policy in order to maintain its defense of fraud. The rule was early stated for the Federal Courts in Schwartz v. United States Insurance Co., 21 Fed.Cas. 770, 772, No. 12,505, relating to a policy of marine insurance. " * * * upon general principles of law, as well as of sound policy and morality, it may be safely laid down as a rule, that if the insured, by deception and false pretenses, induces others to undertake a risk, which, had the truth been disclosed, they would not have taken at all, or would have done so on different terms from those agreed upon, thereby securing to the insured a chance to claim an indemnity in case of loss, or a return of premium in case of safe arrival; it is such a fraud as ought to defeat his right to maintain this action, for the premium."

We therefore conclude that the District Court was in error in ordering refund of premiums to the administratrix of the insured.

Reversed and remanded.