NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3135
_____


OCEAN CITY COSTA RICA INVESTMENT GROUP, LLC,
Appellant

v.

CAMARONAL DEVELOPMENT GROUP, LLC


_____

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-13-cv-00226)
District Judge: Honorable Sue L. Robinson
_____

Argued March 6, 2014


Before: McKEE, Chief Judge, AMBRO, and JORDAN, Circuit Judges

(Opinion filed: July 8, 2014 )


David M. Burkholder, Esquire
Paul A. Logan, Esquire   (Argued)
Powell, Trachtman, Logan, Carrle & Lombardo
475 Allendale Road
Suite 200
King of Prussia, PA   19406

James S. Green, Sr., Esquire
Seitz, Van Otrop & Green

222 Delaware Avenue
Suite 1500, P.O. Box 68
Wilmington, DE   19899

Counsel for Appellant

John C. Cordrey, Esquire
Brian M. Rostocki, Esquire   (Argued)
Reed Smith
1201 Market Street
Suite 1500
Wilmington, DE   19801

Counsel for Appellee

———————————

OPINION

———————————

AMBRO, Circuit Judge

Ocean City Costa Rica Investment Group, LLC ("Ocean City") appeals the

District Court's June 19, 2013 Order vacating an earlier order that allowed Ocean City to

execute on a judgment by taking control of a Costa Rican real estate company owned by

Camaronal Development Group, LLC ("CDG").  CDG has paid Ocean City the full

amount of the money judgment, plus interest and Ocean City's attorney's fees.  As that is

all Ocean City is entitled to receive, we affirm.[1]

---

[1] To be clear, no one wears a white hat in this case save Judge Robinson of the District
Court.  We commend her for deftly resolving this dispute in the face of recalcitrant
behavior by both parties.

## I.    Background[2]

Ocean City sued CDG for breach of contract in 2011, alleging that CDG had not returned Ocean City's deposit on a failed real estate deal.  *See Ocean City Costa Rica Inv. Grp. LLC v. Camaronal Develop. Grp. LLC*, 11-cv-351 (D. Del.) ("Case 1").  After mediation, CDG agreed to a stipulated judgment in the amount of $275,000 plus pre- and post-judgment interest.  The District Court entered judgment in favor of Ocean City pursuant to the parties' stipulation and closed the case.

As would become a theme in this ongoing dispute, Ocean City had difficulty collecting on its judgment.  Within weeks, it moved for injunctive relief "in aid of execution upon the Stipulated Judgment."  Citing federal and local rules providing for the execution of judgments, Ocean City sought ownership of and control over CDG's interest in a company called Sol Sobre El Cedro, Sociedad Anonima ("Sol Sobre"), a Costa Rican real estate company.  Ocean City alleged that Sol Sobre was worth less than the judgment amount and sought to "levy upon . . . [CDG's] 100% ownership interest in [Sol Sobre] by seizing the certificates from [CDG's] registered agent . . . in partial satisfaction of the Stipulated Judgment . . . ."  App. at 30.  Ocean City requested an order directing CDG to relinquish the share certificates in Sol Sobre and enjoining CDG from doing anything to diminish the company's value.  Ocean City also noted that a hearing might be needed to

---

[2] The District Court had subject matter under 28 U.S.C. § 1332.  Its June 19, 2013 Order became final and appealable when that Court dismissed the case on February 18, 2014. *See ADAPT of Phila. v. Phila. Hous. Auth.*, 433 F.3d 353, 362 (3d Cir. 2006) (reaffirming that "a premature notice of appeal, filed after disposition of some of the claims before a district court, but before entry of final judgment, will ripen upon the court's disposal of the remaining claims").  We thus have jurisdiction per 28 U.S.C. § 1291.

value Sol Sobre and acknowledged that it (Ocean City) would return any surplus in the event the value of the company exceeded the amount of its judgment. *Id.* at 31.

In her "Order in Aid of Execution," Judge Robinson granted Ocean City's post-judgment motion. The Order stated in full:

> **AND NOW**, this 16th day of May, 2012, it is hereby **ORDERED** that Ownership of the share Certificate Number 1 "Sol Sobre El Cedro, Sociedad Anonima" is hereby transferred to Ocean City Costa Rica Investment Group, LLC.

*Id*. at 66 (the "Execution Order").

Despite the Execution Order, Ocean City was thwarted in its efforts to gain control of Sol Sobre. Instead of filing another motion in Case 1, Ocean City filed an entirely new lawsuit against CDG. *See Ocean City Costa Rica Inv. Grp. LLC v. Camaronal Develop. Grp. LLC,* 13-cv-226 (D. Del.) ("Case 2"). Case 2 became a related case also assigned to Judge Robinson. The new complaint detailed the proceedings in Case 1 and alleged that CDG violated the Execution Order by interfering with Ocean City's ownership of Sol Sobre and by continuing to carry on business in the real estate company's name. Ocean City sought injunctive relief or, in the alternative, damages for CDG's conversion of Sol Sobre and its assets. Ocean City also sought, and was granted, a temporary restraining order ("TRO") requiring CDG to turn over all of Sol Sobre's documents and assets. The TRO also enjoined CDG from acting in the name of Sol Sobre or conducting business on its behalf.

About two months after Ocean City filed its second complaint and (apparently) as CDG continued to exercise control over Sol Sobre, an attorney for CDG finally entered an appearance in Case 2. In a letter to the Court, CDG explained that it could finally

4

satisfy the stipulated judgment from Case 1 by a cash payment. It also contended that Ocean City's allegations in Case 2 derived from the Execution Order, and thus payment of the judgment should "moot" the relief sought in both cases. App. at 176. Finally, CDG requested a hearing.

Responding to the District Court by letter, Ocean City argued that it had obtained outright ownership of Sol Sobre by virtue of the Court's Execution Order in Case 1, and that Case 2 was a separate cause of action from Case 1 that "is the result of CDG's actions related to Sol Sobre . . . which have occurred *after* the entry of this Court's [Execution] Order and after Ocean City acquired shares in Sol Sobre." *Id*. at 185 (emphasis in original). Ocean City also acknowledged that CDG was seeking a reversal of the Court's Execution Order in Case 1. *Id.* ("CDG . . . posits that [its payment of the judgment from Case 1] will 'moot' the present lawsuit and even suggests that it will 'reverse' this Court's [Execution Order] and restore ownership of Sol Sobre to CDG.").

During a subsequent hearing scheduled to resolve the issues presented by CDG's letter to the Court, Ocean City again stated that CDG was seeking to reverse the Execution Order. Ocean City explained why it believed it was still entitled to outright ownership of Sol Sobre despite CDG's offers to satisfy the judgment in cash and reiterated an earlier request that the Court sanction CDG for evading that judgment. CDG, for its part, repeated that it was ready to pay the judgment from Case 1, including interest, but did not want to do so until it was assured that Ocean City would stop pursuing an interest in Sol Sobre once the judgment from Case 1 was satisfied. Judge Robinson pointedly questioned Ocean City about why it was entitled to anything more

5

than satisfaction of the judgment from Case 1. Ocean City confirmed that it only wanted to satisfy its judgment, but continued to insist that it had a right to do so through ownership of Sol Sobre.

Following the hearing, Judge Robinson ordered CDG to pay to Ocean City the judgment from Case 1 (including interest). *Id*. at 210-12 (the "May 21 Order"). Fully aware of the dilatory behavior of CDG, Judge Robinson also ordered it to compensate Ocean City for the attorney's fees it expended seeking satisfaction of its judgment. Finally, the order provided that, once CDG tendered all payments, Case 2 would be closed. In explaining her order, Judge Robinson rejected Ocean City's contention that it could use the Court's power to get and retain ownership of Sol Sobre. She reasoned that Ocean City "is owed only the amount of the money judgment [from Case 1] plus interest. Consistent with [Federal Rule of Civil Procedure] 69(a), [Ocean City] should not be permitted to use the money judgment as leverage to get real property which was not part of the judgment." *Id*. at 211-12.

CDG complied with its obligations under the May 21 Order, but Ocean City refused to accept payment. In a letter to the District Court, CDG explained that it feared doing so would void the Execution Order. In response, Judge Robinson issued a brief order clarifying that, because CDG had satisfied the judgment from Case 1, Ocean City was indeed required to return to CDG the share certificate in Sol Sobre and record the judgment in Case 1 as satisfied. *Id*. at 227 (the "June 19 Order"). Ocean City appeals.[3]

---

[3] After unsuccessfully seeking a stay of the June 19 Order in the District Court and in our Court, Ocean City accepted the funds from CDG, returned the share certificate, and, after

6

## II.    Standard of Review

Ocean City contends its procedural right to due process was violated when the District Court reversed the Execution Order and eliminated Ocean City's interest in Sol Sobre.  To the extent Ocean City challenges the Court's authority to alter the Execution Order pursuant to Federal Rule of Civil Procedure 60(b), we review for abuse of discretion.  *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008).  Insofar as Ocean City challenges the procedure by which Judge Robinson amended that Order and terminated the litigation, our review is plenary.  *See United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).

## III.   Analysis

Ocean City argues on appeal that it was procedurally improper and unfair for the District Court to vacate the Execution Order that gave Ocean City ownership of Sol Sobre.  Notably, Ocean City never explains why it was entitled to retain ownership of that asset once CDG satisfied the judgment from Case 1.  Because the Court was within its authority to vacate its earlier order, and we detect no unfairness to Ocean City, we affirm.

Although Ocean City never states directly, many of its arguments on appeal seem to be grounded in the notion that the District Court lacked the authority to vacate the Execution Order.  We reject any such contention.  Under Rule 60(b), a Court "may relieve a party . . . from a final judgment [or] order" for any number of reasons, including

almost seven months, finally marked the judgment in Case 1 as satisfied.  *See* Case 1, Docket Entry No. 38.  The District Court then closed the case on February 18, 2014.

7

"any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Moreover, where a district court is reconsidering an earlier order, the law-of-the-case doctrine may set parameters for the court's discretion to grant relief under Rule 60(b), but it does not bar a court's power to do so. *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998). In particular, the doctrine "does not preclude . . . reconsideration of previously decided issues in extraordinary circumstances such as where . . . new evidence is available[.]" *Id.*

Without question the District Court had the authority here to amend the Execution Order. The order was premised on the failure of CDG to satisfy the judgment against it. Its payment of the judgment was thus "new evidence" that allowed the Court to reconsider whether the Execution Order was still warranted. That it did so was intuitively correct and hardly an abuse of discretion. The same goes for its vacating the Execution Order. While we can understand why Ocean City was upset about the delaying tactics of CDG, that conduct did not go unnoticed by the District Court—CDG was required to compensate Ocean City fully for its troubles to the tune of almost $60,000 in attorney's fees.

Ocean City also tries to capitalize on two irregularities in the procedural posture of this case, but neither affected the District Court's authority or discretion to afford the relief it did. First, when Ocean City had trouble executing on its judgment, instead of seeking the assistance of the Court by motion under Federal Rule of Civil Procedure 69, it filed an entirely new action. In its briefs, Ocean City seeks to distance Case 2 from Case 1, arguing that that the District Court improperly reached back to an earlier case to amend the order that awarded Ocean City "unconditional ownership" of Sol Sobre. *See*

8

Ocean City Br. at 12. We have rejected such a formalistic approach that separates an enforcement proceeding from the underlying suit:

> A Rule 69 action can be filed as part of the original suit or as a separate suit. A Rule 69 action, by its very nature, piggybacks on an action establishing liability and has a derivative status. . . . We fail to see a meaningful distinction between Rule 69 actions brought under an original suit and those brought separately . . . .

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 314-15 (3d Cir. 2006). For our purposes, Ocean City's "separate" execution proceeding was part of the initial breach-of-contract case, and the District Court retained its authority to amend any order entered in that case.

Second, Ocean City argues that the District Court's May 21 and June 19 Orders were improperly entered *sua sponte*. *See* Ocean City Br. at 12  It is true that, although the letter to the Court of CDG requested an order that the judgment had been satisfied and that Case 2 should be closed as moot, it never filed a formal motion requesting that relief. We have never decided the specific question of whether a court can *sua sponte* grant a party relief from a judgment under Rule 60(b), and our sister courts are split. *Compare Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 111 (2d Cir. 2001) (allowing a district court to grant Rule 60(b) relief *sua sponte*); *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 351 (9th Cir. 1999) (allowing Rule 60(b) relief on oral motion by a party); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962) (allowing Rule 60(b) relief on the court's own motion with notice to the parties); *United States v. Jacobs*, 298 F.2d 469, 472 (4th Cir. 1961) ("The rule need not necessarily be read as depriving the court of the power to act in the interest of justice in an unusual case in which its attention

9

has been directed to the necessity for relief by means other than a motion." (citation omitted)), *with United States v. Pauley*, 321 F3d 578, 581 n.1 (6th Cir. 2003) (prohibiting the granting of relief under Rule 60(b) in the absence of a motion); *Dow v. Baird*, 389 F.2d 882, 884-85 (10th Cir. 1986) (same). As explained below, we need not resolve that question here (though much favors the well-reasoned decisions of the Second, Fourth, Fifth, and Ninth Circuits that allow a Court to grant *sua sponte* relief).

The District Court's June 19 Order did not relieve a party from judgment. It simply reconsidered an earlier order pertaining to whether Ocean City's judgment had been satisfied. This issue—whether CDG had satisfied the judgment—was put squarely before the Court when Ocean City first moved to execute on its judgment. Nothing about the procedural posture of this case prevented the Court from reevaluating that issue in light of new developments.

Finally, we are confident there was no unfairness in the manner the District Court vacated the Execution Order. CDG noted in its letter to Ocean City and the Court that "[g]iven . . . Plaintiff's newly-filed lawsuit concerns the alleged conduct of CDG to frustrate Plaintiff's collection on its judgment and that judgment can be paid in full, the relief sought by Plaintiff in this case is moot." App. at 176. The Court also made it clear at the hearing that it was reconsidering the Execution Order when it specifically asked Ocean City why the company was entitled to retain ownership of Sol Sobre. *Id*. at 205. Ocean City was not without notice that its ownership in Sol Sobre was in question, and it had ample opportunity to persuade the Court of its right to retain that ownership. It did not succeed.

10

\* \* \* \* \*

When Ocean City first sought ownership of Sol Sobre it conceded that, were the value of the asset to exceed the money judgment, it would remit the surplus to CDG. App. at 31. Underlying that concession was the acknowledgement that Ocean City was entitled to satisfaction of the judgment and nothing more. In pursuing ownership of Sol Sobre, Ocean City lost sight of that basic principle. It has never satisfactorily explained why it is entitled to retain ownership of Sol Sobre now that CDG has paid the full amount of the judgment plus interest and attorney's fees. By any measure Ocean City has been fully compensated. The District Court would not allow Ocean City to obtain a windfall, and we agree with that sound determination. We thus affirm.