In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2631

JERRY L. VAN CANNON,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 16-cv-433-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED JANUARY 18, 2018 — DECIDED MAY 16, 2018

Before SYKES and HAMILTON, *Circuit Judges*, and LEE, *District Judge*.*

SYKES, *Circuit Judge*. In 2009 Jerry Van Cannon pleaded guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). He was sentenced under the Armed Career Criminal Act ("ACCA"), which imposes higher

_____

* Of the Northern District of Illinois, sitting by designation.

penalties on § 922(g) violators who have three prior convictions for a "violent felony" or "serious drug offense." *Id.* § 924(e). Van Cannon's presentence report identified five qualifying ACCA predicates, including Iowa convictions for burglary and attempted burglary and a Minnesota conviction for second-degree burglary. The district judge accepted this tally and imposed the mandatory minimum 15-year prison term.

In 2015 the Supreme Court invalidated, on vagueness grounds, the provision in the "violent felony" definition known as the "residual clause." *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015). Within a year Van Cannon filed for relief under 28 U.S.C. § 2255 in light of *Johnson*. A few days later, the Supreme Court held that Iowa burglary does not qualify under another part of the definition. *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016).

The government conceded the *Johnson* error. The Iowa attempted burglary was a residual-clause offense and no longer counted toward Van Cannon's ACCA total. And *Mathis* knocked out the Iowa burglary. Still, three predicates remained, so the government argued that the *Johnson* error was harmless. The judge agreed and denied § 2255 relief.

A few weeks later, the judge withdrew her order. A recent Eighth Circuit opinion had cast doubt on whether one of the remaining predicates—the Minnesota second-degree burglary—still counted after *Mathis*. *See United States v. McArthur*, 836 F.3d 933 (8th Cir. 2016), *amended & superseded by United States v. McArthur*, 850 F.3d 925 (8th Cir. 2017). The judge appointed counsel and ordered briefing. Van Cannon argued that Minnesota second-degree burglary is not an ACCA predicate; the government maintained that it is. The

judge ultimately sidestepped the issue, concluding instead that Van Cannon's claim was untimely.

We reverse. First, Van Cannon's § 2255 claim was timely; he properly challenged his sentence within one year of *Johnson*. Second, we agree with the Eighth Circuit that the Minnesota crime of second-degree burglary does not qualify as an ACCA predicate. *See United States v. Crumble*, 878 F.3d 656, 661 (8th Cir. 2018); *see also McArthur*, 850 F.3d at 937–40. A burglary counts for ACCA purposes only if its elements match the elements of "generic" burglary, defined as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 598 (1990). The Minnesota statute covers a broader swath of conduct than generic burglary. It permits conviction without proof of burglarious intent—that is, without proof that the offender had the intent to commit a crime at the moment he unlawfully entered or unlawfully "remained in" the building or structure. Accordingly, the Minnesota burglary drops out of the ACCA total, leaving only two predicates. Van Cannon is entitled to resentencing.

## I. Background

Van Cannon is no stranger to trouble with the law. From 1984 to 2008, he was convicted of multiple crimes in three states. As relevant here, his record includes an Iowa second-degree burglary (1984), an Iowa attempted burglary (1992), an Iowa drug felony (1993), a Wisconsin armed robbery (1996), a Minnesota second-degree burglary (2003), and a Wisconsin fleeing (2008).

In the fall of 2008, police received a tip that Van Cannon was selling methamphetamine out of a motel in Eau Claire County, Wisconsin. Several days later the tipster reported that Van Cannon had expressed interest in purchasing an assault rifle and hinted at possible robberies in the near future.

The informant agreed to cooperate with police and introduced Van Cannon to an undercover officer posing as a source for firearms. Van Cannon told the officer he wanted "nothing less than a .357 magnum." Recorded phone conversations followed, and the officer eventually called Van Cannon and offered to sell him a Rock Island Armory .45-caliber pistol for $400. Van Cannon was short on cash, so the officer agreed to front the gun on the condition that Van Cannon would pay $800 to $900 after he completed a "job." The two met in a Walmart parking lot for the exchange. Van Cannon took possession of the gun and was promptly arrested.

A grand jury indicted Van Cannon for possessing a firearm as a felon in violation of § 922(g)(1). He pleaded guilty as charged. The crime ordinarily carries a 10-year maximum, *see* 18 U.S.C. § 924(a)(2), but the ACCA sets a 15-year minimum term and lifts the maximum to life in prison if the defendant has three or more prior convictions for a "violent felony" or "serious drug offense," § 924(e).

The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that

- "has as an element the use, attempted use, or threatened use of physical force against the person of another";

- "is burglary, arson, or extortion, [or] involves the use of explosives"; or

- "otherwise involves conduct that presents a serious potential risk of physical injury to another."

§ 924(e)(2)(B). The first part of the definition is known as the "force clause"; the second clause lists specific qualifying offenses, most notably burglary; and the third clause is the "residual clause."

The presentence report ("PSR") identified five qualifying ACCA predicates: Iowa convictions for burglary and attempted burglary, the Iowa drug offense, the Wisconsin armed robbery, and the Minnesota second-degree burglary. Van Cannon's Wisconsin fleeing conviction also qualified at the time, *see Sykes v. United States*, 564 U.S. 1 (2011), *overruled by Johnson*, 135 S. Ct. 2551, but the PSR didn't include it in the ACCA count, perhaps because it was surplus. The judge accepted the PSR's list of qualifying predicates and sentenced Van Cannon to the statutory minimum 15-year prison term.

In June 2015 the Supreme Court invalidated the residual clause as unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563. In June 2016, just before the expiration of the one-year limitations period, *see* § 2255(f), Van Cannon moved pro se to vacate his sentence in light of *Johnson*. A few days later, the Supreme Court held that Iowa burglary is not an ACCA predicate. *Mathis*, 136 S. Ct. at 2257.

In response to the § 2255 motion, the government agreed that Van Cannon's Iowa attempted-burglary and Wisconsin fleeing convictions were residual-clause offenses and thus no

longer qualified after *Johnson*. The government also conced-
ed that the Iowa burglary dropped out as an ACCA predi-
cate in light of *Mathis*. But three convictions remained—the
Iowa drug offense, the Wisconsin armed robbery, and the
Minnesota second-degree burglary—so the government
argued that the *Johnson* error was harmless. The judge
agreed and denied the motion.

About a month later, the judge withdrew her order based
on the Eighth Circuit's decision in *McArthur*, 836 F.3d 933,
which caused her to question whether the Minnesota burgla-
ry conviction still qualified as an ACCA predicate after
*Mathis*. The judge appointed counsel for Van Cannon and
ordered the parties to brief the issue. In the meantime, the
Eighth Circuit issued a new opinion in *McArthur* unequivo-
cally holding that the Minnesota crime of third-degree
burglary is not an ACCA predicate. 850 F.3d at 937–40.
Minnesota second-degree burglary—Van Cannon's crime of
conviction—is defined in much the same way as third-
degree burglary, only the second-degree crime is committed
in particular places (e.g., a dwelling) or with burglarious
tools.[1] *Compare* MINN. STAT. § 609.582(2)(a) *with* § 609.582(3).

Now represented by counsel, Van Cannon urged the
judge to follow the Eighth Circuit's decision in *McArthur*,

---

[1] The definition is almost the same as the third-degree offense, but the
crime is elevated to second-degree burglary if the building in question is
a dwelling, bank, or pharmacy, or if the offender possesses burglarious
tools. *See* MINN. STAT. § 609.582(2)(a). In 2007 Minnesota renumbered the
second-degree burglary statute, changing it from § 609.582(2) to
§ 609.582(2)(a). The operative language remains the same. We use the
current numbering to refer to both versions.

vacate the 15-year sentence, and resentence him without the ACCA enhancement. The government argued that *McArthur* was wrongly decided. In the end the judge did not reach the merits question. She held instead that Van Cannon's § 2255 claim was untimely and dismissed it.

Van Cannon appealed. While the appeal has been pending, the Eighth Circuit applied its reasoning in *McArthur* to the Minnesota crime of second-degree burglary, holding that it is not an ACCA predicate. *Crumble*, 878 F.3d at 661.

## II. Discussion

Van Cannon argues, as he did in the district court, that his 15-year sentence is unlawful because Minnesota second-degree burglary—one of three available ACCA predicates after *Johnson*—does not qualify as a violent felony. Before we take up that merits question, we pause to clear some procedural underbrush.

### A. Sua Sponte Vacatur

As we've explained, the judge initially agreed with the government that the *Johnson* error was harmless and denied the § 2255 motion on the merits. A few weeks later, she withdrew that order sua sponte. The government did not object to this procedural move, either in the district court or here. That would ordinarily be a waiver, but it's not clear whether the judge's action affects appellate jurisdiction. Probably not, but in an abundance of caution, we briefly address the matter.

Rule 60(b) of the Federal Rules of Civil Procedure permits the court "[o]n motion and just terms" to grant relief from a final judgment for the reasons listed. Appellate courts disagree on whether district judges may grant Rule 60(b)

relief sua sponte. Some circuits hold that the rule requires a *party's* motion. *See, e.g.*, *United States v. Pauley*, 321 F.3d 578, 581 (6th Cir. 2003); *Eaton v. Jamrog*, 984 F.2d 760, 762 (6th Cir. 1993); *Dow v. Baird*, 389 F.2d 882, 884–85 (10th Cir. 1968). Others hold that the district court may vacate a judgment on *its own* motion. *See, e.g.*, *Pierson v. Dormire*, 484 F.3d 486, 491–92 (8th Cir. 2007); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962).

Circuit precedent puts us in the latter camp, though without much explanation. In *Simer v. Rios*, we summarily held that the district court may vacate a final judgment under Rule 60(b) on its own motion. 661 F.2d 655, 663 n.18 (7th Cir. 1981). An even older decision reached the same conclusion. *Ray v. United States*, 121 F.2d 416, 418 (7th Cir. 1941). Other cases—in this court and elsewhere—discuss the current circuit split without mentioning *Simer* or *Ray*. *See, e.g.*, *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 385 (7th Cir. 2008) (discussing the circuit split but overlooking *Simer* and *Ray*); *Ocean City Costa Rica Inv. Grp., LLC v. Camaronal Dev. Grp., LLC*, 571 F. App'x 122, 127 (3d Cir. 2014) (same).

There may be good reason to reconsider *Simer* and *Ray*, especially in light of Rule 60's revised text. *Compare* FED. R. CIV. P. 60(a) (providing that a court may correct a clerical mistake "on motion *or on its own*" (emphasis added)), *with id.* 60(b) (providing that a court may vacate a judgment only "[o]n motion and just terms"). The government hasn't asked us to do so here, so we leave the question for another day.

**B. Timeliness**

After ordering briefs on the effect of the Eighth Circuit's decision in *McArthur*, the judge surprised everyone by dismissing Van Cannon's § 2255 motion as untimely. That was error.

Ordinarily a prisoner must file a § 2255 motion within one year of sentencing. 28 U.S.C. § 2255(f)(1). But the one-year clock restarts when the Supreme Court newly recognizes a right and its decision applies retroactively to cases on collateral review. *Id.* § 2255(f)(3). *Johnson* fits the bill. The Court recognized a new due-process right and later held that the right applies retroactively. *See Welch v. United States*, 136 S. Ct. 1257 (2016). Van Cannon moved to vacate his sentence within one year of *Johnson*, so his request for § 2255 relief was timely.

The district judge saw things differently. After taking a second look at the motion, she decided that Van Cannon wasn't really making a *Johnson* claim after all. As she understood the motion, Van Cannon relied not on *Johnson* (or at least not on *Johnson* alone) but on *Mathis*. She went on to hold that *Mathis* is not retroactive, so the one-year limitations clock never restarted and the § 2255 motion was therefore untimely.

This chain of reasoning rests on a misunderstanding of the claim. To win § 2255 relief, Van Cannon had to establish a *Johnson* error *and* that the error was *harmful*. The government confessed the *Johnson* error: Van Cannon's Iowa conviction for attempted burglary was a residual-clause offense and thus was wrongly included in his ACCA total. The only remaining dispute concerned the question of prejudice. The

government argued that the error was harmless because Van Cannon still had three qualifying ACCA predicates—the Wisconsin armed robbery, the Iowa drug offense, and the Minnesota second-degree burglary.

To rebut this argument, Van Cannon was entitled to show that under current caselaw, one or more of those remaining predicates could not be counted. *See United States v. Geozos*, 870 F.3d 890, 897 (9th Cir. 2017). That's exactly what he did. He maintained that the *Johnson* error was prejudicial in light of *Mathis*, which refined the categorical approach—first established in *Taylor*—for determining ACCA predicates. Under *Mathis* and *Taylor*, he argued, his Minnesota conviction for second-degree burglary could no longer be included in the ACCA count, leaving only two qualifying predicates—not enough for an enhanced sentence. Properly understood, then, Van Cannon invoked *Mathis* and *Taylor* not as independent claims but to show that the *Johnson* error was prejudicial.

The parties agree on this characterization of Van Cannon's motion. The government concedes, as it must, that Van Cannon's Iowa burglary conviction drops out of the ACCA count in light of *Mathis*. The government also agrees that the Wisconsin fleeing conviction cannot be added to the mix to make up the gap. Though considered a residual-clause offense at the time of sentencing, *see Sykes*, 564 U.S. 1, *overruled by Johnson*, 135 S. Ct. at 2563, it no longer qualifies.

For his part, Van Cannon admits that his Iowa drug conviction and his Wisconsin armed robbery still count as ACCA predicates. So the harmless-error question boils down to the proper classification of the Minnesota second-degree burglary conviction. If it qualifies as a violent felony, then

Van Cannon has three valid predicates and the *Johnson* error was harmless. If it does not, then the error was prejudicial and Van Cannon must be resentenced.

## C. Minnesota Second-Degree Burglary

With these procedural matters out of the way, we turn now to the question of how to classify the Minnesota crime of second-degree burglary. The ACCA includes burglary in its list of enumerated violent felonies, *see* § 924(e)(2)(B)(ii), but the statute does not define "burglary." *Taylor* holds that the ACCA incorporates the "modern, generic 1984 definition"—that is, "the generic sense in which the term [was then] used in the criminal codes of most [s]tates." 495 U.S. at 544, 598. Generic burglary "contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* at 598 (citing 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.13(a), (c), (e) (1986)). This definition "approximates that adopted by the drafters of the Model Penal Code." *Id.* at 598 n.8.

*Taylor* also holds that classifying convictions under the ACCA requires a categorical approach that looks only to "the elements of the statute of conviction, not to the facts of each defendant's conduct." *Id.* at 601. Limiting the inquiry to statutory elements rather than actual facts implements the text of the ACCA, which "refers to 'a person who … has three previous *convictions*' for—not a person who has *committed*—three previous violent felonies or drug offenses." *Id.* at 600 (emphases added) (quoting § 924(e)(2)(B)(i)). *Taylor*'s elements-based approach also rests on concerns about fairness and reinforces the Sixth Amendment rule against

increasing penalties based on judge-found facts. *Mathis*, 136 S. Ct. at 2252–53.

So Minnesota's crime of second-degree burglary will qualify as an ACCA predicate "only if its elements match those of [the] generic offense." *Id.* at 2251. Under the categorical approach, "[a] crime counts as 'burglary' under the Act if its *elements* are the same as, or narrower than, those of the generic offense." *Id.* at 2248. If, on the other hand, the statute in question "sweeps more broadly" than the generic offense, then the conviction doesn't qualify as an ACCA predicate. *Descamps v. United States*, 570 U.S. 254, 260 (2013).

One final doctrinal point before we proceed. The categorical comparison is easy if the statute in question contains only one set of elements defining a single crime: the sentencing court simply compares that set to the elements of the generic offense. Things get tricky, however, if the statute is phrased alternatively—if, for example, it lists elements in the alternative and thus defines more than one crime, or if it lists different factual means of committing an element of a single crime. *Mathis*, 136 S. Ct. at 2249.

An alternatively phrased statute of the first type—one that lists alternative *elements*—is considered "divisible" in the sense that it divides into multiple crimes. For that kind of statute, the sentencing court must "determine what crime, with what elements, a defendant was convicted of" before counting the conviction as an ACCA predicate. *Id.* This inquiry brings into play the so-called "modified categorical approach," which permits the court to review "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)" but *only* for the limited purpose of determining whether the elements of the

crime of conviction match (or are narrower than) the elements of the generic offense. *Id.* Again, the underlying facts of the defendant's conduct do not matter. *Id.* at 2256 ("Given [the] ACCA's indifference to how a defendant actually committed a prior offense, the court may ask only whether the *elements* of the state crime and generic offense make the requisite match.").

It follows, then, that if an alternatively phrased statute describes different factual means of committing an element of a single crime, then the modified categorical approach has no role to play. *Id.* at 2253. A statute of this type is "indivisible": it defines a single offense, albeit one with multiple modes of commission. *Id.* at 2248. If the alternative means listed in an indivisible statute cover a broader swath of conduct than the generic offense, then a conviction under the statute doesn't count as an ACCA predicate. *Id.* at 2251. Put slightly differently, "if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries." *Id.* at 2248.

Our job is made easier because the Eighth Circuit preceded us in applying these principles to Minnesota's burglary statute. Extrapolating from its earlier decision in *McArthur*, the Eighth Circuit recently concluded that Minnesota's second-degree burglary statute is indivisible, covers more conduct than the generic offense, and thus is not an ACCA predicate. *Crumble*, 878 F.3d at 661; *see also McArthur*, 850 F.3d at 937 (holding the same for Minnesota third-degree burglary). We agree.

The Minnesota crime of second-degree burglary is defined as follows: "Whoever enters a building without consent and with intent to commit a crime, *or enters a building without consent and commits a crime while in the building*, either directly or as an accomplice, commits burglary in the second degree" if certain aggravating factors are present. MINN. STAT. § 609.582(2)(a) (emphasis added). The disjunctive phrasing describes two different factual ways of committing a single crime; it does not establish two crimes. That's how the Eighth Circuit read the statute. *Crumble*, 878 F.3d at 661 (construing the Minnesota second-degree burglary statute); *McArthur*, 850 F.3d at 938 (construing almost identical language in the same statute defining third-degree burglary). Because the two statutory alternatives are different *means* of committing a single crime rather than distinct *elements* of separate crimes, the Eighth Circuit held that the statute is indivisible. *Crumble*, 878 F.3d at 661; *McArthur*, 850 F.3d at 938. The government does not challenge this conclusion, and we see no reason to disagree with our sister circuit, which has greater familiarity with Minnesota law.

Because the statute is indivisible, a conviction under it does not count as an ACCA predicate if one of the listed alternatives is broader than generic burglary. That describes this statute. The first alternative is generic burglary: A person commits burglary in the second degree if he "enters a building without consent and with intent to commit a crime." MINN. STAT. § 609.582(2)(a). But the second alternative is not: A person can be convicted of this same crime if he "enters a building without consent and commits a crime while in the building." *Id.*

The second alternative is just a trespass (a nonconsensual entry) followed by the commission of a crime within the trespassed building at some point thereafter. Thus a person could be convicted under this statute if, for example, he broke into a building without permission to escape the cold and only later decided to steal something (or caused injury to person or property, whether intentionally or recklessly). On those facts the entry would be unprivileged but not accompanied by burglarious intent—that is, the perpetrator did not commit an unprivileged entry *with the present intent* to commit a crime in the building. The second alternative in the Minnesota statute thus covers a broader swath of conduct than *Taylor*'s definition of generic burglary.

The government insists that the second alternative fits comfortably within *Taylor*'s definition of generic burglary, which includes the act of unlawfully "*remaining in* … a building … with intent to commit a crime." 495 U.S. at 598 (emphasis added). In the government's view, Minnesota's trespass-plus-crime alternative matches the "remaining in" version of generic burglary because this variant of the generic offense requires only that intent to commit a crime arise at some point while the perpetrator is in the trespassed building.

We see several problems with this argument. For starters, the trespass-plus-crime alternative in the Minnesota statute doesn't require proof of intent to commit a crime *at all*—not at *any* point during the offense conduct. The government maintains that intent to commit a crime is implicit because the statute requires proof of a completed crime within the trespassed building. But not all crimes are intentional; some require only recklessness or criminal negligence. That aside,

*Taylor*'s elements-based approach does not countenance imposing an enhanced sentenced based on *implicit* features in the crime of conviction.

More importantly, the government's argument overlooks that generic burglary requires intent to commit a crime *at the moment of* the unlawful entry or unlawful "remaining in" a building or structure. That's what distinguishes burglary from simple trespass. As the Eighth Circuit has explained, the proper reading of *Taylor* "and the sources on which it relied [is] that a generic burglary requires intent to commit a crime *at the time of* the unlawful or unprivileged entry or the initial 'remaining in' without consent." *McArthur*, 850 F.3d at 939 (emphasis added) (citing 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.13(b), (e), at 468, 473–74 & n.101 (1st ed. 1986)).

"Contemporaneous intent was the essence of burglary at common law," and *Taylor*'s phrasing of the intent element "mirrors the typical phrasing at common law." *United States v. Bonilla*, 687 F.3d 188, 196–97 (4th Cir. 2012) (Traxler, C.J., dissenting) (citing 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 21.1(e) (2d ed. 2003) and 4 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND (1769)). *Taylor* relies on the 1986 LaFave treatise and the *Model Penal Code*, both of which explain that a key requirement of burglary is the element of contemporaneous intent to commit a crime at the moment of the unlawful entry or unlawful "remaining in" the structure. *See* LAFAVE & SCOTT, *supra*, § 8.13(b), at 468 (explaining that intent "need only exist at the time the defendant unlawfully remained within"); MODEL PENAL CODE § 221.1 cmt. (1), (3) (AM. LAW INST. 1980) (referring to the "purpose that accompanies the entry"

and "the purpose that must accompany the intrusion"). The current version of the LaFave treatise retains this requirement. *See* 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 21.1(e) (3d ed. 2016). So a person commits the remaining-in variant of generic burglary when he enters with consent but exceeds the scope of that consent—say, for example, by staying in a store after closing time or by entering a part of a building not covered by the consent. But it's not a burglary *unless* the person had the intent to commit a crime at the moment he unlawfully "remained in" the building. *Id.* § 21.1(b) & n.47.

Moreover, and contrary to the government's view, the remaining-in variant of generic burglary is not a continuous act. "Rather, it is a discrete event that occurs at the moment when a perpetrator, who at one point was lawfully present, exceeds his license and overstays his welcome." *McArthur*, 850 F.3d at 939. We know this because *Taylor* referred to "entry into, or remaining in" as discrete, alternative acts. On the government reading of the generic offense, "entry" is almost superfluous: If "remaining in" is a continuous act, then every unlawful "entry" would immediately become an unlawful "remaining" as well. *See United States v. Herrold*, 883 F.3d 517, 532 (5th Cir. 2018) (en banc); *McArthur*, 850 F.3d at 939.

So we agree with the Eighth Circuit that Minnesota's trespass-plus-crime alternative for second-degree burglary covers more conduct than *Taylor*'s definition of generic burglary. *See Crumble*, 878 F.3d at 660–62; *see also McArthur*, 850 F.3d at 939 ("If the defendant does not have the requisite intent at the moment he 'remains,' then he has not committed the crime of generic burglary."). Accordingly, Minnesota

second-degree burglary does not qualify as a violent felony under the ACCA.[2]

Only two ACCA predicates remain—the Wisconsin armed robbery and the Iowa drug offense. That's not enough to support the enhanced sentence. Because the *Johnson* error was prejudicial, Van Cannon must be resentenced.

REVERSED and REMANDED.

---

[2] There is an emerging circuit split on the correct way to understand *Taylor*'s requirement of burglarious intent. *Compare United States v. Priddy*, 808 F.3d 676, 684–85 (6th Cir. 2015), *abrogated on other grounds*, *United States v. Stitt*, 860 F.3d 854, 856 (6th Cir. 2017) (en banc), *and United States v. Bonilla*, 687 F.3d 188, 192–94 (4th Cir. 2018), *with United States v. Herrold*, 883 F.3d 517, 531–36 (5th Cir. 2018) (en banc), *and United States v. McArthur*, 850 F.3d 925, 939 (8th Cir. 2017).