In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-1092

TERRANCE ROBERTS,

*Petitioner-Appellant*,

*v.*

MICHEL LEJEUNE,

*Respondent-Appellee*.

_____

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-cv-541-bbc — **Barbara B. Crabb**, *Judge*.

_____

ARGUED MARCH 30, 2022 — DECIDED AUGUST 4, 2022

_____

Before EASTERBROOK, WOOD, and HAMILTON, *Circuit Judges*.

WOOD, *Circuit Judge*. Twenty-two years ago, Terrance Roberts was indicted for his part in a prostitution business centered in Minneapolis. A jury in the Eastern District of Missouri found him guilty of violations of the Mann Act, 18 U.S.C. §§ 2421–24, the money-laundering statute, 18 U.S.C. § 1956, and associated conspiracies. He was sentenced to a term of 432 months. See *United States v. Evans*, 272 F.3d 1069

(8th Cir. 2001). He later failed both on direct appeal in the Eighth Circuit and on a motion under 28 U.S.C. § 2255 to win any relief. See *Evans, supra* (direct appeal); *Roberts v. United States,* No. 03-CV-786, 2005 WL 1484511 (E.D. Mo. June 13, 2005) (section 2255).

But in 2016, eight years after the Supreme Court decided *United States v. Santos*, 553 U.S. 507 (2008), Roberts filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in one last effort to set aside his money-laundering convictions. (By this time he had served his full terms on the Mann Act convictions, which we can therefore disregard for most purposes.) Roberts's theory is that he was convicted on the money-laundering counts for conduct that is not a crime, and that this renders those convictions invalid. He reasons that both his indictment and the jury instructions at trial were inconsistent with the Supreme Court's definition of the word "proceeds" in 18 U.S.C. § 1956. The district court denied his petition. We conclude that Roberts does not face the kind of "fundamental miscarriage of justice" that must exist to justify relief under section 2241, and so we affirm the district court's judgment.

# I

Starting in 1982, members of the Evans family jointly operated a business involving the "recruitment, transportation, control, and abuse of prostitutes." *Evans*, 272 F.3d at 1077. Roberts and his father, Monroe Evans, worked as pimps, recruiting women to work in escort services and massage parlors, and to walk the streets. In January 2000, the law caught up with Roberts, and he was indicted on multiple counts for violating the Mann Act and the money-laundering statute (as well as associated conspiracies for both). Count 19 charged

him with so-called promotional money laundering, based on a $2,000 wire transfer he received from Evans, while Count 44 charged him with conspiring to commit both promotional and concealment money laundering, based on the same transfer.

As we noted, Roberts was convicted on all counts, and we are here on collateral review. Before turning to the merits, it is helpful to review the distinction between the promotional and concealment branches of money laundering. It is rooted in the language of 18 U.S.C. § 1956, which begins by stating that the person charged must know that "property involved in a financial transaction represents the proceeds of some form of unlawful activity" and then do something (or attempt to do something) with those proceeds. It then identifies the two branches of the law we mentioned, first focusing on actions taken "with the intent to *promote* the carrying on of specified unlawful activity," *id*. § 1956(a)(1)(A) (emphasis added), and then turning to activity designed to conceal or disguise the unlawful source, *id*. § 1956(a)(1)(B). Importantly, the two methods of violating the statute share the definition of "proceeds." In addition, the same penalty provisions apply whether the motive for the money laundering was promotional or concealment. *Cf. Mathis v. United States*, 579 U.S. 500, 504 (2016) (distinguishing between elements of an offense and the factual means by which the offense is committed).

At trial, the jury was instructed that "proceeds," as used in section 1956(a)(1), refers to "any property, or any interest in property, that someone acquires or retains as a result of the commission of the specified unlawful activity," and that the word "property" was not limited to money. In other words, the instruction focused on gross receipts, not net profits.

Many years after Roberts's conviction, the Supreme Court turned its attention to the definition of "proceeds" in section 1956. See *Santos*, 553 U.S. at 507. The unlawful activity in *Santos* was a gambling operation, and the question was whether the relevant "proceeds" included all receipts, or only the profits. Unfortunately, however, no single opinion commanded the support of a majority of the Justices. Justice Scalia's lead opinion, which was joined by Justices Souter, Ginsburg, and (in part) Thomas, took the position that the term proceeds—undefined in the statute—was ambiguous, insofar as the statute gave no clue whether it encompassed all "receipts" or only "profits." That ambiguity triggered the rule of lenity, and so the Scalia plurality took the position that the statute covered only profits. The dissenters would have held that the term meant "the total amount brought in." See *id.* at 531 (Alito, J., dissenting).

Justice Stevens concurred in the judgment. See *id.* at 524. He resisted the idea that there was a singular definition of "proceeds" for purposes of section 1956, given the many ways in which money laundering can occur. He found no help in the legislative history of the statute, and so opted to take a case-by-case approach that left open the possibility that in some instances the word "proceeds" might refer to gross revenues. As for the particular gambling business at issue in *Santos*, however, he agreed with Justice Scalia that net revenues was the appropriate measure.

The best we can say about this split decision is that a majority of the Justices thought that there are some occasions in which the government must show that the defendant laundered net profits, not gross receipts. Roberts believes that his is such a case, whether one looks to Justice Scalia's opinion or

that of Justice Stevens. Since the jury in his original proceeding was never asked to determine whether he had laundered criminal profits, and instead was told to focus on gross receipts, he concludes that the jury may have convicted him for conduct that is not prohibited by the statute. Ergo, he reasons, he is entitled to the issuance of a writ of habeas corpus.

## II

At the time Roberts filed his section 2241 petition, he was incarcerated at the Federal Correctional Institute in Oxford, Wisconsin, then under the direction of Warden Louis Williams II. He thus correctly filed his petition in the Western District of Wisconsin. See *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). Roberts has since been moved to FCI Sandstone, in Minnesota, where Michel LeJeune is now the warden, but that move did not affect the district court's jurisdiction, nor does it affect ours. We have made the appropriate substitution of wardens in the caption of the case. See FED. R. APP. P. 43(c)(2); CIR. R. 43.

These moves have, however, led to a debate between the parties on the question whether "the law" of the Seventh Circuit (*i.e.*, the circuit where Roberts was incarcerated at the outset of the litigation) or "the law" of the Eighth Circuit (*i.e.*, the circuit of conviction) should apply. The discussion has arisen because the standards for proceeding under section 2241, instead of by the normal motion under 28 U.S.C. § 2255, have been articulated differently by the two circuits.

For several reasons, however, this case strikes us as a bad vehicle for resolving that question. To begin with, we are not convinced that the different circuits follow different *law*, in the same way as the laws of Colorado and Texas, or France and

the United States, may vary. The circuits are all federal courts; they all are obliged to follow the Supreme Court's guidance; and they administer a common set of statutes. When a conflict in the circuits arises, the Supreme Court may decide to accept a case to resolve that conflict. See S. CT. R. 10(a). That is the normal way in which differing interpretations around the country are ironed out. We note as well that it would be awkward at best for the courts within a circuit to conduct the exercise of guessing what a sister circuit might do with a case, much as federal courts must do in cases governed by the Rules of Decision Act, 28 U.S.C. § 1652, and *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Even if we overcame those reservations, we have a serious waiver issue in this case. Choice of law (assuming that is the correct way to describe the choice among the decisional law of different circuits) is not jurisdictional; to the contrary, parties regularly agree to a particular body of law. That is just what happened here. From the beginning of the district-court proceedings, the government argued that the law of the Seventh Circuit applies to this case. Only on appeal has the government announced that it has "since reevaluated its position" and that it now thinks that a petitioner can prevail only if he satisfies the law of both (or all) potentially interested circuits.

This will not do. For present purposes, we will accept the government's stipulation in the district court that the law of the Seventh Circuit applies. We can thus save for another day the broader implications of the choice-of-circuit-precedent question. See generally *Chazen v. Marske*, 938 F.3d 851, 865 (7th Cir. 2019) (Barrett, J., concurring) (surveying the problems with a circuit-of-confinement rule). Indeed, in the present

context this debate may be affected by the way in which the Supreme Court resolves the case of *Jones v. Hendrix*, No. 21-857, *cert. granted*, 142 S. Ct. 2706 (2022). The question presented in *Jones* is this:

> [W]hether federal inmates who did not—because established circuit precedent stood firmly against them—challenge their convictions on the ground that the statute of conviction did not criminalize their activity may apply for habeas relief under 28 U.S.C. § 2241 after [the Supreme Court] later makes clear in a retroactively applicable decision that the circuit precedent was wrong and that they are legally innocent of the crime of conviction.

Granted, the central feature of that question—the fact that circuit precedent was "firmly against" the inmate—is not present in Roberts's case. As far as we can tell, the question whether "proceeds" for purposes of money laundering includes only net profits, or instead encompasses gross receipts, was an open issue at the time Roberts's appeal reached the Eighth Circuit. We, too, saw it as open when we decided *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002), and opted for net profits (as it later turned out, consistently with the *Santos* plurality).

Despite these distinctions, it is possible that *Jones* may shed some light on the issue now before us. If, for example, the Court holds that even the inmates described in the question presented are barred from the use of section 2241 to challenge such a conviction, it is hard to see how Roberts could prevail. On the other hand, he might be helped by a ruling allowing such inmates to proceed. Or the decision may have no bearing on his situation. All we can do is speculate, and for

that reason we see no need to hold this case for *Jones*. We therefore apply our normal framework for section 2241 cases.

## III

Normally, a federal prisoner who wishes to mount a collateral attack on either his conviction or his sentence must proceed under 28 U.S.C. § 2255, which channels such cases to the sentencing court—here, the Eastern District of Missouri. Section 2255 also imposes a strict one-year time limit for such motions. See *id.* § 2255(f). Although there are various points from which that year is measured, it is uncontested that Roberts's case falls well beyond any of them. He thus faces the difficult task of showing that "the remedy by [section 2255] motion is inadequate or ineffective to test the legality of his detention." *Id.* § 2255(e). If he can demonstrate that, then the door is open for him to seek habeas corpus relief under section 2241.

We have often referred to this escape hatch from section 2255 as the "safety valve," and for consistency, we will do so here as well. The requirements for eligibility for the safety valve are exacting. We first set them out in *In re Davenport*, 147 F.3d 605, 610–12 (7th Cir. 1998), and more recently summarized them as follows:

> First, the prisoner must show that he relies on a "statutory-interpretation case," rather than a "constitutional case." … Second, the prisoner must show that he relies on a retroactive decision that he could not have invoked in his first § 2255 motion. … The third condition is that the sentence enhancement ... ha[s] been a grave enough error to be deemed a miscarriage

of justice corrigible therefore in a habeas corpus proceeding.

*Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) (cleaned up). For this purpose, actual innocence of the crime of conviction qualifies as a fundamental error or miscarriage of justice that can be corrected in a habeas corpus proceeding. *Brown v. Rios*, 696 F.3d 638, 641 (7th Cir. 2012).

The government has conceded that Roberts can satisfy the first two parts of the *Davenport* framework: *Santos* was a statutory-interpretation case, not a constitutional one, and it had not yet been handed down at the time Roberts was pursuing his section 2255 motion. (Recall that *Santos* was decided in 2008, and Roberts's section 2255 motion was resolved in 2005.) The only question is thus whether Roberts has suffered a fundamental miscarriage of justice stemming from the fact that his jury was instructed to focus on gross receipts rather than net profits from his prostitution business.

Both of his money-laundering convictions were based on the $2,000 wire transfer we described earlier. It is unclear whether that transfer exclusively drew on gross profits to pay for a business expense, or if it represented net proceeds that Roberts was using for promotional or concealment purposes. In both *United States v. Lee*, 558 F.3d 638 (7th Cir. 2009), and *United States v. Hodge*, 558 F.3d 630 (7th Cir. 2009), the facts indicated that the defendants (there, as here, operators of a prostitution business) were using the funds for expenditures such as rent, phone bills, wages, advertising, and utilities. See *Lee*, 558 F.3d at 640–41; *Hodge*, 558 F.3d at 632. The evidence is more ambiguous in Roberts's case. Trial witnesses testified that "Monroe had [Wilson] wire prostitution proceeds from St. Louis to Terrance Roberts … to purchase a Mercedes Benz

that was used on prostitution calls." *Evans*, 272 F.3d at 1092. But that testimony does not reveal whether the car was used exclusively for business purposes, or if instead its primary use was for promotion or concealment of the illegal proceeds of the business. A Chevy would have done just as well for simple transportation, it seems.

Even if we were to accept Roberts's argument that the evidence cannot be understood to show promotional money laundering of net profits beyond a reasonable doubt, he has a harder row to hoe with respect to concealment. *Santos* appears to have focused on the promotional branch, which lends itself better to the distinction between net and gross revenues. The post-*Santos* cases in this circuit have not specifically addressed how this distinction should be applied in concealment cases. See, *e.g.*, *United States v. Hosseini*, 679 F.3d 544, 548 (7th Cir. 2012). In *Hosseini*, the issue arose only on plain-error review, and we concluded that "the unsettled state of the law means that the claimed error is not plain." *Id.*; see also *United States v. Aslan*, 644 F.3d 526, 550 (7th Cir. 2011) (finding no plain error in an instruction that did not limit the jury's consideration to net profits, in a concealment case).

If plain error cannot be demonstrated by a district court's failure on its own to give the jury an instruction that directs it in a concealment case to rely only on net profits, we do not see how that same situation can give rise to a fundamental miscarriage of justice. The test for plain error, after all, requires the court to examine whether (1) there is an error, (2) that error is clear or obvious, (3) the error affected the defendant's substantial rights, and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (cleaned up).

Elements three and four of that test overlap to a considerable degree with the third *Davenport* inquiry—whether there is a "grave enough error to be deemed a miscarriage of justice corrigible … in a habeas corpus proceeding." *Brown*, 719 F.3d at 586.

Count 44 of the indictment charged Roberts with both promotional and concealment money laundering, based on the transfer of the $2,000. He does not contest the fact that the wire transfer occurred. Whether that money was drawn from gross receipts and then concealed in the form of a car, or was used to defray costs of the business, is not a question that was posed to the jury. But against the backdrop of the inconclusive decision in *Santos* (even with respect to promotional money laundering, much less concealment efforts), we would not find plain error in the jury instruction. And for similar reasons, we do not see a fundamental miscarriage of justice on these facts.

Lastly, we note that we need not decide whether Roberts's decision to wait eight years after *Santos* was handed down before filing his section 2241 petition furnishes an independent reason for affirming the district court's decision. The Supreme Court's understanding of a given statute can evolve over the years, but the Court has never said that any new articulation of a statute's meaning automatically opens the door to retrospective relief for all who are potentially affected. Roberts's money-laundering convictions have been final for years, and he has not persuaded us that a contested understanding of the reach of the *Santos* decision is reason to disturb them now.

The judgment of the district court is AFFIRMED.